Honors, may it please the Court. Michael Parente on behalf of Petitioner Juan Valenzuela. This case involves attorney misconduct that was investigated and punished by the California State Bar and which ultimately stood in the way of Valenzuela's ability to file a timely federal petition. The Attorney General has not contested the core of the misconduct in this case, which went so far as to include sending the petitioner a draft and signed copy of a state petition. Well, you had an attorney here who was in a very, very bad emotional state. I mean, that's what happens. Yes, Your Honor, that's correct. So I'm not saying that's excused, but he had a lot of problems, and a lot of attorneys have problems like that. And being a lawyer is not an easy job. Yes, Your Honor, that's correct. I don't want to run him down. He was not a good attorney. He didn't do his job here. He was not a good attorney. That's a given. Okay, Your Honor. Yes, so it's easy to get mad at him, but once you learn more about him, then you can understand. Counsel, can you help me? Judge Fisher made a, what I think is a factual finding, that Mr. Melson was not retained to pursue federal habeas relief. Do we have to find that finding to be clearly erroneous? No, Your Honor. I would say that that is not a factual finding as a matter of law, just because it is, in effect, interpreting the retainer agreement, which was a contract. But even if that finding were taken to be true, it doesn't affect the outcome of this case, because more importantly, Judge Fisher did not have before her, at the time of that decision, this Court's ruling in Porter v. Olison, which came out more than two months after her dismissal of Ellensmith's petition. That was in June of 2010. Then Porter v. Olison comes out in August 26th of 2010, and that decision makes very clear that misconduct at the state habeas level alone, because that was the only misconduct that the attorney in that case, Richard Dangler, he was known for, there's a state decision, White at 121 Calap 4th, 1453, where he is known for operating what was referred to by the Court as a writ mill among habeas petitioners. And in Porter v. Olison, Porter was one of those petitioners that was wrapped up in that state habeas writ mill. And because of that misconduct at the state habeas level, he was also unable to develop the facts, which he alleged, which were that his attorney had engaged in a state level misconduct, which prevented him from filing a federal petition. And I would add that our appellant opening brief, that was one of two cases, the Porter case, that we cited in PASM, and it was not responded to in the Attorney General's briefing whatsoever.  They have yet to acknowledge the Porter v. Olison decision. The other case that we cited in PASM was Spitzen v. Moore. So the fact that this misconduct occurred at the state habeas level really does not have a bearing on the case, but I would say that it was either clearly erroneous or, on the other hand, it should at the very least be considered a question of law, because it does involve a retainer agreement, which was not available, or at least was not referred to in the record of the Porter v. Olison decision. So is it your position that without regard to what your client may have understood at the time, the mere fact that he hired an attorney to pursue habeas relief is enough? No, Your Honor. The mere fact of hiring the attorney is not enough. But when you combine that attorney's misconduct, if it reaches a particular level, which in this case I think it does because of the State Bar findings, which are very similar, I mean, I would consider the misbehavior cited, I don't mean to put this attorney in a bad light any more than as Judge Bergersen noted, but the misconduct in this case, in comparison to the misconduct in Porter, is far greater here. So the misconduct in Porter, the attorney was merely, he filed two petitions on behalf of the client, both in State court, first in the Superior Court, and then moving on. I guess here's the problem. As I read the timelines, his federal statute of limitations expired on February 1 of 2000. Yes, Your Honor. Right? And I'm looking at the client billing form, which is ER 159, and it looks to me like Melson is pretty actively working the case through at least 2000 before there's a two-year lull. So the question I'm really asking is one of causation. How can we tell from that record that whatever it was that Melson did or did not do during the time period was the cause for Valenzuela not filing a federal petition? Well, Your Honor, he should have filed within the one-year statute of limitations, which would have preserved his client's federal interest. Obviously, the fact that he filed no petition after that one-year period that you're referring to in the billing records, he filed no petition after that and conceded, he was very contrite in conceding that he did no work of legal value for this client until long after the deadline has expired. Well, that's not what the billing records show, though. The billing, unless your position is that the billing records are false, that he really didn't talk with attorney Richard Walker and all the other things that are listed in the invoice. If the billing records in this case I think are inconclusive to deny this petition on preliminary review, it's totally consistent with the billing records for the attorney misconduct into this case to go beyond what would be required? Well, the billing records are consistent with what the State Bar found when you look at the long gaps. But the problem is those gaps don't occur until after the expiration of the federal statute of limitation. Well, for example, Your Honor, initially, Mr. Melson, that's the name of the attorney in this case, he initially promised to return the files to Valenzuela within two weeks of receiving them, which was right after he was hired. He was hired a year before the deadline. He did not do that. And the billing records show that the last time he viewed those transcripts was in November of 1999. So between November of 1999 and the February deadline, he made no efforts to give Valenzuela back his transcripts or his files so that he could do his own work on a federal petition. And in withholding the transcripts throughout the limitations period and ultimately not doing the job that he was hired to do by the retainer agreement, which was to file a petition and to represent Valenzuela in his habeas corpus proceeding, he effectively prevented and stood in the way of Valenzuela's ability to file a timely federal petition. And I also think that we should view these billing records as potentially being suspect and not findings of fact. They were submitted to the State Bar, but these are records that were submitted to the State Bar nearly seven years after the alleged conduct. So is your argument that by not having the transcript of the trial, he couldn't file a federal habeas petition? At the time... Is that the causation argument? Consistent with this Court's precedent in Spitzin and also Dovey-Bubbsby, where it was also found that the petitioner lacked the files and had requested them or expected them before the deadline expired and without them, yes, Your Honor, he was unable to... So is your answer, this long-winded answer, is the answer yes? Yes, I apologize. Yes, he is unable without the transcripts to file an effective petition. At that time, he had no exhausted claims in state court because there was no petition for review to the California Supreme Court. So at that time, he was not in a situation where he would have a mixed petition and he could just take what he had and go into federal court and maybe file a Pace or a Reinstate. But again, that was not the standard that this Court imposed on Porter, who did have exhausted claims, because before Porter hired the attorney Richard Dangler, he had already pro se gone all the way through the California Supreme Court. So he hired him after one round of state habeas work and then essentially hired him to do a second round of state habeas work. So he was certainly in a position to go back to state court. And there, a dismissal on preliminary review is not considered acceptable. Other than not returning the file to the client, is there any evidence in the record that would establish that Valenzuela intended to file a federal habeas petition before... Yes, Your Honor. For example, in Valenzuela's first application, pro se, in the Superior Court, when he writes out his own petition application for good cause, he is citing all of the federal equitable tolling cases. He is citing Spitzin already at that point. So he is essentially saying, I know that I'm late and these are federal equitable tolling cases. When is this petition filed? After February 1 of 2000? Yes, yes. This is when he got himself a jailhouse lawyer, right? Well, he was trying to get help from other inmates. Just answer my question. Yes, Your Honor. After he got a jailhouse, help from a jailhouse lawyer. All right. So he was trying... So is there any other evidence besides? I'm thinking I'm hearing the answer is no. No. In terms of what he did prior to February 1 of 2000. Well, Your Honor, in terms of his efforts to file a federal petition, I think that there are points that you can look to in this record to see that his interest was ultimately... Let me try it one more time, counsel. Yes. What evidence is in the record to show that Mr. Valenzuela took any action before February 1 of 2000 to file a federal habeas petition? He did not make an effort to file a federal habeas petition before February 1 of 2000 because he would have no exhaustive claim. So under Carey v. Saffold, he would essentially be filing an unlawful petition in federal... Counsel, you're arguing law to me. I'm just asking you a factual question. And I think the answer is there isn't any evidence that he did anything else up until February 1 of 2000. That's correct, Your Honor. All right. Thank you. That's all I was asking. And of course, the magistrate judge in this case dismissed it without even hearing from the government. Just dismissed it saying the case was time-barred on its face. That's right, Your Honor. The government was never required to answer this petition yet, and I'd like to reserve the balance of my time for rebuttal, if I may. You don't have any balance of your time, but... Oh, sorry. Yeah, yeah. It's all right. We're one of the old savings and loans, so we'll give you more credit. Now, that drug charges were filed after Valenzuela's trial against an officer who testified during the trial, and talk about using that to impeach the officer. Do you have any... Was that Brady material that was involved? When you make that general statement, what is it you're talking about? Well, Your Honor, the only... What have you got? Well, Your Honor, at this stage, this still remains a fairly undeveloped case. What we have right now is knowing that basically the most credible witness at trial, which was this officer, the only officer that testified, was after trial, convicted himself, and is now serving 40 years in prison on a drug conviction. At this point, it's unclear, but he was giving testimony to the effect of these gangs around, and since he was involved in that himself, it may be that there's impeachable evidence there, but this claim has yet to be further developed. It was granted as a COA, as a colorable claim, and it is something that, in addition to Valenzuela's other claims... Well, when was this officer convicted? 2000 was the time of his conviction, so it is after Valenzuela's trial, but the question is whether... When was the conviction? The trial for the officer was in 2000. I'm not sure precisely of the date of the conviction of the officer. 2000? 2000, you say? Yes, the year 2000. Year 2000. And your client was convicted when? In 95? His original trial was in 1995. His conviction came later because of two mistrials, and so his conviction is in 1998. So his conviction was in 1998. Okay. When in 1998? I can look for the precise month for you. I don't have that information right offhand, the precise date. I take it to be basically a four-and-a-half to five-year gap from trial to the conviction of the officer who testified at trial, and the key question that Valenzuela has is whether that officer may have been under investigation for other matters at the time of the original trial, five years before his conviction, the officer's conviction, and whether that information may not have been handed over by the government and may have been used to impeach the main officer. So you don't know what period of time was involved in this officer's illegal activities? Exactly, Your Honor. We do not know that. Okay. Yeah, okay. Thank you. Good morning, Your Honors. May I please look for Deputy Attorney General Blythe Luskay for respondent. Just to answer Your Honor's question about when the conviction happened here, it was September 22nd of 2007. September 22nd, 2007? I mean, sorry, 1997. 1997 was the conviction in this case. Petitioner here was wronged by his attorney. There's no question about that. But did his attorney's wrongs prevent Petitioner from filing a federal habeas petition for more than 10 years that it took him to file it? Well, the behavior of the counsel did lull him into believing that his habeas corpus proceedings and his rights were being enforced. Well, I think Your Honor could find that for some period of time that that could be true. But even if there is some period of time to say that the entire 10 years Petitioner was not able to file a federal habeas petition, which is what he's asking for here for the court to equitably toll. The problem I have with this is that we don't really know much about what happened in the other three years because the magistrate judge dismissed it without letting any of his claim be developed. Which three years is that, Your Honor? I don't know which three years. I mean, the problem is you're saying a whole 10 years. We know for sure he was relying on this attorney for at least seven years. So we don't know what else was going on. And the court's premature dismissal of this case without letting the claim be developed at all precludes us from knowing that. Well, Your Honor, Petitioner has presented a pretty extensive declaration as well as documents to back it up. The state is not contesting any of those facts at this point. There's really nothing more that would need to be developed that would show that he's entitled to equitable tolling sufficient to make his federal petition timely. In particular, there were four years that passed, we know, between the time that Petitioner hired his attorney and the time that he believed the attorney filed a superior court petition. We know that that happened. We know that there were three years, another three years that passed where his attorney stopped communicating with him at that point, basically. And Petitioner made no efforts to get his files until I believe it was December of 2006 when he finally asked his attorney for his files because he said he had a new claim that he wanted to file. But even because he believed that his old claim, his first claim, had been filed, but there's a requirement that in order to proceed with your federal hiatus petition, you have to exhaust your state remedies. How could he, under these circumstances, how could this Petitioner have filed this federal habeas claim when none of his state claims had been exhausted? Unbeknownst to him. I mean, he thought that they were proceeding. Right. He thought they were proceeding. But in, I believe it was February of 2007, is when he found out that his original superior court petition that supposedly was filed by his attorney was never filed. At that point, it became incumbent upon him, certainly, to do something. And it wasn't until, I believe, July of that year, 2007, that the superior court sent him his transcripts. He received them in September of 2007. He could have immediately... Do you think it's tolled up to that point? I think if Your Honor is inclined to grant equitable tolling, that would be the latest period that he could get. He's up until he got his transcripts in 2007, September of 2007. Okay, so in September... What do we know about the time period from September 2007 to the date on which he... Let's see. Actually, he filed the state habeas petition in November 2707, right? Actually, that's when his attorney finally filed the state petition in superior court. Petitioner filed his post-state petition December 3rd of 2007. Okay, that's acting pretty quickly, isn't it, after getting his state transcripts? That's approximately three months. And the superior court considered that petition and denied it in July of the following year, July 30th of 2008. At that point, petitioner... In the superior court, especially considering how much time had passed and that what he was doing at that point was exhausting. If he filed anything in federal court... I mean, the courts now are allowed to just dismiss it, dismiss the federal habeas when the state claims haven't been exhausted. It's in their discretion. It used to be they had to stay them. So it used to be you could file a protective federal habeas and now you can't. So I just don't see how that period of time can be held against him. Well, petitioner could have filed immediately in the California Supreme Court in order to exhaust his claims and then come to federal court. I think he could have easily done that within the year after he got his... Is that how it works? I thought California had this strange system where you can file in the court of appeal and then you can file in the superior court, then you can file in the Supreme Court. It's a very strange system. You're telling me that if you file in the state Supreme Court first that's sufficient for exhaustion? Yes, Your Honor. And it's true, you can file in any particular order as far as habeas petitioners. Every court in California is a court of original jurisdiction for habeas purposes. So petitioner could have gone straight to the California Supreme Court if his goal was exhaustion for federal purposes. How would he know that? At some point it becomes incumbent upon him to file within the statute of limitations purposes whether he speaks to an attorney... But what we're talking about is equitable tolling. Well, I'm assuming at this point the equitable tolling cannot continue past the time that he has his transcripts. At that point there's no extraordinary circumstances. Wait, he gets his transcripts and he's supposed to file that day? Doesn't he have to get some time to read them? Well, at that point he has a full year. If Your Honor grants him equitable tolling until that time then at that point he has a full year just as anybody else would have starting from the very beginning. And he didn't file until 2010, right? Exactly, Your Honor. When in 2010? It was March of 2010, I believe March 10th. March 28th, 2010. Thank you, Your Honor. And so once his equitable tolling is done which could not continue at any point past the time that he gets his transcripts because at that point the extraordinary circumstances of his attorney's misconduct are gone. Anything standing in his way of filing in federal court is gone at that point. We don't know. What we don't know is what transpired during that period of time. And was he actively working diligently to get his federal habeas petition filed? We have no idea if he was. But we do know that he was aware of the statute of limitations at that point because he had sent a letter to his appellate attorney and to his hired habeas attorney citing the statute of limitations within the letter. So we know that he was aware of it at that point. Your Honor had asked how would he know? But he would be aware of it at that point. He showed that he was aware of it. Once he filed, if Your Honor gives him equitable tolling until the time that he gets his transcripts then at that point he would be entitled to statutory tolling for the time that his superior court petition was pending because it was properly filed and denied on the merits. However, his subsequent three state petitions he filed then in the California Court of Appeal in the California Supreme Court and again in the California Supreme Court all three of those petitions were denied as untimely. And so he would not be entitled to statutory tolling for any of those three state petitions. At that point his federal petition cannot be timely. So even if Your Honor grants him the equitable tolling for the entire time period up until he got his transcripts his federal petition, which was not filed until March of 2010 would still not be timely. So we would invoke the rule, what is it? Pace versus Degugliamo if I'm pronouncing it right? Your Honor was brave to try to pronounce that. I would not. But yes, the Pace court is the one. It would be deemed not properly filed because all three claims were rejected as untimely. Correct, Your Honor. So even if Your Honor grants equitable tolling he's not entitled to enough equitable tolling enough statutory tolling to make his federal petition timely. And unless the Court has any further questions I'd ask the Court to affirm the District Court's dismissal on timeliness grounds. Thank you. Well, in the representation agreement the attorneys the scope of his representation  the scope of his representation the scope of his representation as I recall wasn't limited to state habeas. talked about habeas proceedings. Well, it did talk about a habeas proceedings and all of the communication between the attorney and his client. I want to stop you right there. When properly interpreting a contract don't you first start under the rules of construction with the contract itself? Yes, Your Honor. This contract says in a case involving colon clearly typed in as a form retainer agreement habeas corpus. It doesn't specify whether it's state it doesn't limit it to state it just says habeas corpus. And then the next sentence says he accepts that employment agrees to take such steps as are reasonably advisable to enforce the client's rights. And again, actually it's broader because it's all of his rights which includes federal habeas. So I think that to the extent that the magistrate judge found that this agreement did not include federal habeas she made an error of law in both the manner in which he interpreted the contract and in not following the general rules of contract construction. Well, Your Honor and if Your Honor would continue actually reading that sentence that you were just reading enforce the client's rights and then there's a comma that says accept that no appeals will be taken without the party's consent and any appeals taken will require a new fee and retainer agreement. Well, I think anything beyond the trial courts it is but I don't think in the scope of what is in this agreement and what the parties actually did and how they communicated with each other we don't go to look at the letters you can't look at the letters when you're construing this contract you have to look at the contract. Well, and I believe that the following sentence would qualify what came before it and in any event like I said before Well, it says in ambiguity we interpreted it against the person who drafted the agreement that's the lawyer. Correct. Okay, so we have to give it a broad interpretation. But this still doesn't help him for the two years after 2008 Right, that was going to be my next point, Your Honor is that even if we accept, as I've said even if we accept that there's equitable tolling even if we accept that this attorney agreed to represent him for federal habeas even if we accept that he committed misconduct throughout the entire time period that he was representing him it still is not sufficient. What do we know about those two years? Which two years, Your Honor? I'm sorry. The two years after? We know that that petitioner then began filing in state court he filed four petitions in state court before coming to federal court and we know that that's in the record there's no question about the dates that those petitions were filed the dates that they were denied, the basis for the denials that's all clearly set forth in the record here and it's simply not sufficient to get petitioner to the point where his federal petition could be considered timely under the law. All right. We understand your position. Thank you, Your Honor. Thank you, Your Honor. First, I just wanted to address the Pace case because that does not preclude this Court from finding those petitions as timely filed In the face of state court rulings that dismiss them as untimely? Yes, Your Honor. Pace at 544 U.S. 408 410 is the PIN site. It specifically says that it's addressing quote, petitions filed after a time limit and which does not fall within any exceptions to that limit petition. I should have not made it plural. This is an exception to that limit. This is equitable tolling and if given that exception, there is no reason to deem that those petitions... Well, but doesn't, isn't Artuse v. Bennett then it comes in and declares that it's not properly filed? This Court is authorized by Carrie v. Saffold to make its own determination... I'm talking Supreme Court precedent, not Ninth Circuit. Carrie v. Saffold is also a Supreme Court case and it does authorize this Court where it's unclear, for example, in Carrie v. Saffold there was a four and a half month gap and the question was, after it was denied in the California Supreme Court it was denied on the merits and for lack of diligence and the question was whether or not that gap of four and a half months should receive gap tolling, the statutory tolling and they said that they could not say that the Ninth Circuit was incorrect in ultimately finding that to be a timely filed petition and this is at 536 U.S. 218-19 because there were special circumstances present there. What were those special circumstances? In that case, the petitioner had received his notice of the denial of one of those petitions late and because he received late notice of his California Court of Appeal denial he was extra late getting into California Supreme Court. And do we have that situation here? Well, Your Honor, here we don't have such a long gap. The longest gap that Valenzuela has in marching through the State Courts is only three and a half months and when he's going into the California Court of Appeal that really is the first petition where he has all of his files. The September date that the Attorney General was referring to that's only the date on which Valenzuela received his files from the trial court, which is just the transcripts but he received all of his attorney files later in December of 2007. But even if this Court grants equitable tolling from the September 2007 date and gives Valenzuela gap tolling just between his first round of petitions in the State Court and does not give him gap tolling for the second California Supreme Court decision he still would be timely by 27 days if his EDPA deadline begins in September of 2007 and he is not tolled during the period in which he has a pending petition in the State Courts, in the Superior Court, California Court of Appeal Assuming that we don't find that it was not properly filed. Exactly. Exactly, under the Cary v. Southhold pen site that I just gave there. That's all, Your Honor. Thank you. Well, let me just ask you, what if we don't find that? What do we know about the subsequent two years? Which two-year period are you referring to? I'm referring to the period that the State Attorney General was referring to where she said, well, you give him a year from September of 2007 and that leaves two years before the Federal Court. She's referring to the fact that from the time Valenzuela gets his files in December 2008, it's true, he's not in Federal Court until 2010. But what he's doing is he's, like anyone else, marching through the State Courts to exhaust his claims and then after his second California Supreme Court denial, within two weeks, he files his Federal petition. And his longest gap among those State petitions, again, is only the three-and-a-half-month gap when going into the California Court of Appeal, which is the first time he had all of his claims. And he used that time to expand his claims from the one claim petition that Attorney Nelson filed to a seven-claim, perhaps eleven-claim, if you include the sub-claims petition that he generates for the California Court of Appeal. And those are his claims. Okay. I think I understand. All right. Thank you.
judges: Pregerson, Wardlaw, Tallman